Larissa Lee (15657)
WILSON SONSINI GOODRICH & ROSATI, P.C.
15 W. South Temple, Ste 1700
Salt Lake City, Utah 84101
(801) 401-8525
larissa.lee@wsgr.com

Anthony Weibell (*admitted pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300
aweibell@wsgr.com

*Attorneys for Defendant*
TIKTOK INC.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| VICTORIA SETHUNYA,<br><br>    Plaintiff,<br><br>v.<br><br>TIKOK INC., ET AL,<br><br>    Defendants. | **DEFENDANT TIKTOK INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT**<br><br>Case No. 2:22-cv-00678-JNP-DAO<br><br>Judge Jill N. Parrish<br>Magistrate Judge Daphne A. Oberg |

# **CONTENTS**

I.   INTRODUCTION ........................................................................................................ 1

II.  BACKGROUND .......................................................................................................... 2

III. LEGAL STANDARD................................................................................................... 5

IV.  THE CLAIMS AGAINST TIKTOK SHOULD BE DISMISSED................................. 7

    A.  Both Claims Against TikTok Fail Because Plaintiff Consented to and Granted TikTok a License for the Conduct Alleged ...................................... 7

    B.  Any Claims Based on the Comments Made by Other Users are Barred by the Communications Decency Act......................................................... 9

    C.  Plaintiff Cannot Otherwise State Any Claim Against TikTok Based On Allegedly Offensive Comments Made by Other Users ................................ 12

V.   CONCLUSION............................................................................................................ 13

I.  **INTRODUCTION**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant TikTok Inc. ("TikTok") respectfully submits this Motion to Dismiss Plaintiff Victoria Sethunya's Second Amended Complaint ("SAC") and Memorandum in Support.

The claims against TikTok in Plaintiff's SAC should be dismissed for the same reasons stated by the Court in its prior order finding Plaintiff's original complaint failed to state a claim (*see* ECF No. 14), as well as the additional reasons explained below. Indeed, Plaintiff has a history of filing unmeritorious, pro se complaints in this District.[1] This case is no different.

Here, Plaintiff alleges that she made videos and published them to TikTok's entertainment platform. A core function of the TikTok platform, of course, is to enable the sharing of videos so that other users may comment on and incorporate that content into their own videos (such as by creating a side-by-side display of the original video and a commentary video, or by lip-syncing a new video to the audio of the original video). Plaintiff expressly agreed to this functionality and granted a full license to TikTok and all TikTok users to make use of the content she posted to the platform. Yet Plaintiff's lawsuit now asks the court to erase and rewrite that contract to force TikTok to allow Plaintiff to post her content to the TikTok platform while disallowing the use of

---

[1] *See, e.g.*, *Sethunya v. Weber State Univ.*, 382 F. App'x 793 (10th Cir. 2010) (summarily affirming without oral argument the dismissal of Plaintiff's complaint against Weber State University for inadvertently omitting plaintiff's name from a list of international students), *cert. denied*, 562 U.S. 1090 (2010); *Sethunya v. President Thomas Monson*, No. 2:12-CV-454 TS, 2013 U.S. Dist. LEXIS 2265 (D. Utah Jan. 4, 2013) (dismissing lawsuit filed by Plaintiff against church president and every individual partner listed on the letterhead of Kirton & McConkie for sending letter barring plaintiff from church property because of her mental health condition and failure to obtain needed treatment); *Sethunya v. Wells Fargo Bank 3077*, No. 2:18-cv-378, 2018 U.S. Dist. LEXIS 159800 (D. Utah Aug. 20, 2018) (granting motion to compel arbitration of action filed by Plaintiff in violation of arbitration agreement); *Sethunya v. Trupiano Law, P.C.*, No. 2:09 CV 75 TC, 2009 U.S. Dist. LEXIS 70117 (D. Utah Aug. 10, 2009) (adopting magistrate report and recommendation to dismiss action filed by Plaintiff against her former attorney).

1

that content by other users. She also asks the Court "to hold TikTok responsible" for allegedly harassing comments posted by *other* users on her videos.

As noted in the Court's prior order and further explained below, Plaintiff fails to allege facts sufficient to state any claim against TikTok. In addition, Plaintiff's claims also fail for at least three insurmountable reasons:

(1) Plaintiff expressly consented to the conduct alleged and granted TikTok a license to all content she posted to the platform. As a bedrock principle of contract law, the Court cannot rewrite her contract with TikTok, nor can it retroactively revoke the license Plaintiff previously granted to TikTok.

(2) Under the Communications Decency Act ("CDA"), online services like TikTok cannot be sued for the comments posted by other users.

(3) Plaintiff has not and cannot allege the facts needed to support a claim against TikTok for infliction of emotional distress or related claims.

Because these legal roadblocks cannot be circumvented, further amendment would be futile, and Plaintiff's lawsuit against TikTok should therefore be dismissed with prejudice.

## II. BACKGROUND

TikTok operates the TikTok short-form-video-sharing app ("the TikTok App") that allows users to upload video and audio content to the platform to share with the public. The core function of the TikTok platform is to allow users to share videos that can be interacted with by other users through comments or incorporating that content into their own videos (such as by creating a side-by-side display of the original video and a commentary video, or by lip-syncing a new video to the audio of the original video). When creating a TikTok account or otherwise accessing the TikTok

platform, users must expressly agree to this functionality and grant a full license to TikTok to make use of the content they post to the platform:

> You acknowledge that we [TikTok] have **no obligation to pre-screen, monitor, review, or edit any content posted by you and other users** on the Services (including User Content). . . .
>
> Users of the Services **may also extract all or any portion of User Content created by another user to produce additional User Content,** including collaborative User Content with other users, that combine and intersperse User Content generated by more than one user. Users of the Services may also overlay music, graphics, stickers, Virtual Items (as defined and further explained Virtual Items Policy) and other elements provided by TikTok ("TikTok Elements") onto this User Content and transmit this User Content through the Services. . . .
>
> You or the owner of your User Content still own the copyright in User Content sent to us, but by submitting User Content via the Services, **you hereby grant us an unconditional irrevocable, non-exclusive, royalty-free, fully transferable, perpetual worldwide license** to use, modify, adapt, reproduce, make derivative works of, publish and/or transmit, and/or distribute and to **authorise other users of the Services and other third-parties to view, access, use, download, modify, adapt, reproduce, make derivative works of, publish and/or transmit your User Content in any format and on any platform**, either now known or hereinafter invented. . . .
>
> For the avoidance of doubt, the rights granted in the preceding paragraphs of this Section include, but are not limited to, **the right to reproduce sound recordings** (and make mechanical reproductions of the musical works embodied in such sound recordings), and publicly perform and communicate to the public sound recordings (and the musical works embodied therein), all on a royalty-free basis. . . .
>
> In addition, we have the right – but not the obligation – in our **sole discretion to remove, disallow, block or delete any User Content** (i) that we consider to violate these Terms, or (ii) in response to complaints from other users or third parties, with or without notice and **without any liability to you**. . . . **We do not guarantee the accuracy, integrity, appropriateness or quality of any User Content, and under no circumstances will we be liable in any way for any User Content**.[2]

---

[2] *See* Exhibit 1 to the Declaration of Anthony J Weibell in Support of Defendant TikTok Inc.'s Motion to Dismiss (emphasis added), at § 7. The TikTok Terms of Service also contain an arbitration agreement for non-intellectual property disputes, *id.*, which TikTok reserves the right to enforce in the event this action becomes a non-intellectual property dispute.

3

Plaintiff alleges that she has a TikTok account and has been posting her videos on the TikTok platform since December 2020. SAC ¶¶ B.a-B.h. On August 15, 2022, she posted a video to TikTok in which she states "Yes, I am doing blasphemy, yes, and I am ready to go to hell" – this video remains publicly accessible on her TikTok account.[3] SAC ¶ D.x. Unsurprisingly, many other users commented on her video and incorporated it into their own TikTok videos. SAC ¶ D.d. To profit from this popularity, Plaintiff alleges that she registered her video with the U.S. Copyright Office and provided TikTok with the required IRS forms to report her TikTok earnings. SAC ¶¶ B.h, D.x.

Despite the express license Plaintiff granted to TikTok when she agreed to the TikTok Terms of Service, Plaintiff alleges that she sent DMCA takedown notices to TikTok to demand that TikTok remove the "blasphemy" audio recording. SAC ¶ D.l. But when TikTok complied with Plaintiff's notices and began removing the audio sound clip from the platform, starting with the original file uploaded by Plaintiff, Plaintiff complained and asked TikTok to "restore the Blasphemy sound TikTok removed from her own videos and of those who had her permission to use her sound." SAC ¶ D.r. Plaintiff's lawsuit now asks the Court "to restrict TikTok's use of her private and protected Blasphemy video without her permission." SAC ¶ D.t. In other words, she asks the Court to force TikTok to publish Plaintiff's content while preventing most (but not all) other users from using that content, contrary to the express license granted by Plaintiff and the normal function of the TikTok platform.

Plaintiff also alleges that other users have posted harassing comments about her while she was live-streaming videos, and she asks the Court "to hold TikTok responsible" for the harassment

---

[3] *See* https://www.tiktok.com/@africanexmormon/video/7132241940619250987?lang=en.

by other users. SAC ¶¶ C.f, C.l. She admits that when she reports such conduct, TikTok terminates the live stream to put a stop to the harassment. SAC ¶ C.e. Not without irony, Plaintiff alleges her "I am doing blasphemy" video was itself a response to another user who had been offended by Plaintiff's posting of videos in which she "hangs from a cross in a crucifix." SAC ¶ D.b. Plaintiff thus asks the Court to force TikTok to both allow Plaintiff to post content that offends others and remove other users' comments that offend Plaintiff.

Plaintiff clarifies that she asserts two claims against TikTok: (1) copyright infringement, and (2) liability for the harassing comments made by other TikTok users. SAC ¶ D.y.

### III. LEGAL STANDARD

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Accordingly, while the Court accepts as true all material allegations in the complaint, it need not accept the truth of conclusory allegations or unwarranted inferences, nor should it accept legal conclusions as true merely because they are cast in the form of factual allegations. *Id.* at 678-79.

Nor should the Court accept as true allegations that are contradicted by documents on which a plaintiff's claims are based. As the Tenth Circuit has explained, a district court may consider "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). This rule prevents plaintiffs from selectively pleading only portions of documents that support their claims, while omitting portions that might undermine their claim.

*Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013) ("[W]e examine the document itself, rather than the complaint's description of it."). Similarly, the Court will not "accept as true the complaint's factual allegations insofar as they contradict . . . matters subject to judicial notice." *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013). Information typically subject to judicial notice includes "factual information found on the world wide web." *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) (district court "abused its discretion by failing to take judicial notice of [information] provided by [the defendant] on the internet"); *Labertew v. Winred, Inc.*, No. 2:21-cv-555-TC, 2022 U.S. Dist. LEXIS 90580, at *17 (D. Utah May 18, 2022) (taking judicial notice of defendant's website terms of service on motion to dismiss (citing cases)).[4]

In a pro se case such as this, even though a pro se litigant is held "to a less stringent standard than formal pleadings drafted by lawyers," *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), she must "follow the same rules of procedure that govern other litigants." *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Thus, a pro se plaintiff "still has the burden of alleging sufficient facts on which a recognized legal claim could be based." *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (internal quotation marks omitted). While the court may make some allowances for a pro se plaintiff's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements," *Hall*, 935 F.2d at 1110, the court "will not supply additional factual

---

[4] For these reasons, the Court may properly consider on this motion the TikTok Terms of Service attached as Exhibit 1 to the Declaration of Anthony J Weibell in Support of Defendant TikTok Inc.'s Motion to Dismiss because these terms are publicly available on the TikTok website, referenced in and relied on by the Complaint, and are not in dispute. *See* SAC ¶¶ C.c, D.g, D.h., D.v (referring to and relying on TikTok's "community guidelines" which are a part of the Terms of Service).

allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf," *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). Nor may a court otherwise "assume the role of advocate for [a] pro se litigant." *Hall*, 935 F.2d at 1110.

## IV. THE CLAIMS AGAINST TIKTOK SHOULD BE DISMISSED

As explained above, Plaintiff asserts two claims against TikTok: (1) copyright infringement, and (2) liability for the harassing comments made by other TikTok users. SAC ¶ D.y. Both of these claims fail.

### A. Both Claims Against TikTok Fail Because Plaintiff Consented to and Granted TikTok a License for the Conduct Alleged

Plaintiff cannot state a cause of action against TikTok because she expressly consented to and licensed all of the conduct alleged when she agreed to the TikTok Terms of Service. Specifically, Plaintiff agreed that other users could use her content on the TikTok Platform, that TikTok could not be sued for use of content Plaintiff uploaded to the Platform, and that TikTok could not be held liable for the videos and comments posted by other users to the TikTok Platform. *See supra* Section II. This license and consent are a complete defense to Plaintiff's claims, including all copyright infringement and other tort claims that she asserts against TikTok.

It is a bedrock principle of law that no cause of action for tortious conduct can be maintained where it is based on conduct expressly permitted by a valid contract. *Lee v. Langley*, 2005 UT App 339, ¶ 20 n.3, 121 P.3d 33 ("No intentional tort will lie where the plaintiff consents to otherwise tortious activity."), *aff'd*, 2006 UT 66, 147 P.3d 443; Restatement (Second) of Torts § 892A cmt. a (1979) ("[N]o wrong is done to one who consents.").

Accordingly, courts routinely dismiss claims that contradict an online service's terms of service. *See, e.g.*, *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016) ("Because the allegations in the amended complaint contradict the incorporated Terms of

7

Service, all of Plaintiff's claims must be dismissed."), *aff'd*, 700 F. App'x 588 (9th Cir. 2017); *Sweet v. Google Inc.*, No. 17-cv-03953-EMC, 2018 U.S. Dist. LEXIS 37591, at *27 (N.D. Cal. Mar. 7, 2018) ("[A]ll of [plaintiff's] claims (the § 17200 claim; the claims for breach of contract, the implied covenant, and quasi-contract; and the claim for tortious interference) are subject to dismissal given the explicit terms of the agreement."); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017) (contract and tort claims were barred where based on conduct expressly allowed by Facebook's Terms of Use), *aff'd*, 745 F. App'x 8 (9th Cir. 2018).

Similarly, "[a] license is a complete defense to a claim for copyright infringement," and a copyright owner who has authorized the defendant to use their copyrighted material "waives [their] right to sue the licensee for copyright infringement." *Latour v. Columbia Univ.*, 12 F. Supp. 3d 658, 661-62 (S.D.N.Y. 2014); *accord Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir. 2005) ("To establish copyright infringement, a plaintiff must prove (1) ownership of a valid copyright and (2) *unauthorized* copying of constituent elements of the work that are original." (emphasis added)).

Here, all of Plaintiff's claims must fail because she expressly authorized other TikTok users to use her content for their own videos, granted TikTok "an unconditional irrevocable, non-exclusive, royalty-free, fully transferable, perpetual worldwide license" to that content, and agreed that "under no circumstances will [TikTok] be liable in any way for any User Content," such as the comments posted by other users in response to Plaintiff's videos. *See supra* Section II; Weibell Decl. Ex. 1 § 7. Consequently, the Court cannot grant Plaintiff the relief she seeks without re-writing the parties' contract. *Monaco Apartment Homes v. Figueroa*, 2021 UT App 50, ¶ 10, 489 P.3d 1132 ("[The] court will not rewrite a contract to supply terms which the parties omitted." (quoting *Hal Taylor Assocs. v. Unionamerica, Inc.*, 657 P.2d 743, 749 (Utah 1982))).

8

Because Plaintiff's consent to the complained-of conduct is an insurmountable bar to her claims, Plaintiffs' claims should be dismissed with prejudice.

### B. Any Claims Based on the Comments Made by Other Users are Barred by the Communications Decency Act

Separate and independent from the issue of consent, any claim that TikTok is liable for other users' comments to Plaintiff is barred by the Communications Decency Act ("CDA"). *See, e.g.*, *Anderson v. TikTok Inc.*, — F. Supp. 3d —, 2022 U.S. Dist. LEXIS 193841, at *1-11 (E.D. Pa. Oct. 25, 2022) (TikTok is "immune under the Communications Decency" from claims alleging that content posted by other users caused injury to plaintiff), *appeal filed*, No. 22-3061 (3d Cir. Nov. 10, 2022).

Section 230(c)(1) of the Act mandates that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The statute expressly bars any claims that run afoul of this directive, providing that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.* § 230(e)(3).

The CDA "creates a federal immunity to any state law cause of action that would hold computer service providers liable for information originating with a third party." *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 984-85 (10th Cir. 2000); *accord Batzel v. Smith*, 333 F.3d 1018, 1020 (9th Cir. 2003) (Congress has "chosen for policy reasons to immunize from liability for defamatory or obscene speech 'providers and users of interactive computer services' when the . . . material is 'provided' by someone else."). The purpose of this immunity is to "facilitate the use and development of the Internet by providing certain services an immunity from civil liability arising from content provided by others." *F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1195 (10th Cir. 2009). "The prototypical service qualifying for this statutory immunity is an

9

online messaging board (or bulletin board) on which Internet subscribers post comments and respond to comments posted by others." *Id.*

The immunity applies to "all cases arising from the publication of user-generated content," regardless of the underlying theory of liability. *Doe v. MySpace*, *Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *accord, e.g.*, *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330-31 (4th Cir. 1997) ("[Section] 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service."); *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1267 (D.C. Cir. 2019) ("[Section] 230 immunizes internet services for third-party content that they publish, including false statements, against causes of action of all kinds."). Immunity "does not depend on the form of the asserted cause of action; rather, it depends on whether the cause of action necessarily requires that the defendant be treated as the publisher or speaker of content provided by another." *Doe v. Backpage.com, LLC*, 817 F.3d 12, 19 (1st Cir. 2016).

Because Section 230 prohibits treating an online service provider as a "*publisher*" of third-party content, "immunity applies not only for the service provider's decisions with respect to that posting, but also for its inherent decisions about how to treat postings generally" – including objectionable material. *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d at 413, 422 (1st Cir. 2007) (emphasis added). The CDA "specifically proscribes liability" for any claim based on hosting or linking to third-party content, including claims which seek to hold a provider liable for decisions about monitoring, screening, or removing material – "actions quintessentially related to a publisher's role." *Green v. Am. Online*, 318 F.3d 465, 471 (3d Cir. 2003). "Lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such

10

as deciding whether to publish, withdraw, postpone or alter content – are barred." *Backpage*, 817 F.3d at 18 (quoting *Zeran*, 129 F.3d at 330).

For these reasons, it does not matter whether a service provider has been notified of allegedly harmful material. "It is . . . well established that notice of the unlawful nature of the information provided is not enough to make it the service provider's own speech. . . . Section 230 immunity applies even after notice of the potentially unlawful nature of the third-party content." *Lycos*, 478 F.3d at 420; *accord Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 500-01 (E.D. Pa. 2006) (CDA immunized Google even after receiving notice of allegedly defamatory content), *aff'd*, 242 F. App'x 833 (3d Cir. 2007); *Obado v. Magedson*, No. 13-2382 (JAP), 2014 U.S. Dist. LEXIS 104575, at *22-23, *26-27 (D.N.J. July 31, 2014) (same), *aff'd*, 612 F. App'x 90 (3d Cir. 2015).

The Tenth Circuit and other courts have uniformly applied Section 230 to dismiss lawsuits arising from allegedly offensive and harmful content posted by users. *See, e.g.*, *Silver v. Quora, Inc.*, 666 F. App'x 727, 727, 730 (10th Cir. 2016) (affirming dismissal of complaint alleging that website published disparaging statements about plaintiff "and caused him to lose millions of dollars in income" "[b]ecause § 230 of the CDA provides immunity from liability"); *Getachew v. Google, Inc.*, 491 F. App'x 923, 925 & n.2 (10th Cir. 2012) (affirming dismissal of claims against Google for content posted by others that caused plaintiff to be "publicly humiliated, harassed, and intimidated"); *Anderson*, 2022 U.S. Dist. LEXIS 193841, at *1-11 (TikTok is "immune under the Communications Decency" from claims alleging that content posted by other users caused injury to the plaintiff).

Section 230 immunity should be applied at the pleading stage because it "'is an *immunity from suit* rather than a mere defense to liability' and 'it is effectively lost if a case is erroneously

11

permitted to go to trial.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-55 (4th Cir. 2009) (citation omitted). Courts therefore "aim to resolve the question of § 230 immunity at the earliest possible stage of the case because that immunity protects websites not only from 'ultimate liability,' but also from 'having to fight costly and protracted legal battles.'" *Id.* at 255 (citation omitted).

Because Plaintiff seeks to hold TikTok, "an interactive computer service" provider, liable for the comments posted by other users on the platform, Plaintiff's claims are barred by the CDA and should be dismissed with prejudice, just as in *Anderson*.

### C. Plaintiff Cannot Otherwise State Any Claim Against TikTok Based on Allegedly Offensive Comments Made by Other Users

As a third independent ground to dismiss Plaintiff's attempt to hold TikTok liable for the comments posted by other users, Plaintiff has not (nor could she) state the facts needed to meet the elements of any such claims.

Plaintiff cannot identify any legal duty owed by TikTok to Plaintiff that has been breached, or any intent on TikTok's part to cause Plaintiff injury sufficient to support a tort claim. Although Plaintiff does not identify any specific cause of action against TikTok arising from the allegedly harassing comments made by other users, *see* SAC ¶¶ C.a-C.l, there is no tort liability without breach of duty or intent to cause injury. "Under Utah law, a claim for negligent infliction of emotional distress arises only when a defendant breaches a duty of care to the plaintiffs." *Figueroa v. United States*, 64 F. Supp. 2d 1125, 1144 (D. Utah 1999). And such claims are limited to situations where the defendant "should have realized that the distress, if it were caused, might result in illness or bodily harm." *Carlton v. Brown*, 2014 UT 6, ¶ 56, 323 P.3d 571. Similarly, for a claim for intentional infliction of emotional distress, a plaintiff must allege the defendant (1) intentionally engaged in conduct toward the plaintiff with either (a) the purpose of inflicting

12

emotional distress or (b) where any reasonable person would have known that such would result, and (2) the conduct is outrageous and intolerable. *See Jackson v. Brown*, 904 P.2d 685, 687-88 (Utah 1995). Plaintiff alleges no such facts here, nor could she do so from alleged comments that were posted by users on her videos.

To the extent Plaintiff's complaint contains words implicating alleged discrimination, the Court has already identified in its prior order why Plaintiff cannot assert a cause of action relating to alleged discrimination or harassment. *See* ECF No. 14 at 4 ("Ms. Sethunya's complaint fails to state any cognizable claim against TikTok. . . . To the extent Ms. Sethunya seeks to assert a discrimination claim against TikTok, she fails to state a plausible claim."). Plaintiff's amended complaint does not (nor could it) cure these deficiencies.

## V. CONCLUSION

For the foregoing reason, all claims against TikTok Inc. should be dismissed with prejudice. Plaintiff has already amended her complaint twice, and "dismissal with prejudice is proper for failure to state a claim when 'it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Fleming v. Coulter*, 573 F. App'x 765, 769 (10th Cir. 2014) (quoting *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999)).

Dated: May 5, 2023

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ *Anthony J Weibell*

*Attorneys for Defendant*
TIKTOK INC.